## STATE v. LAKE MINING COMPANY.[1]

November 26, 1954.

No. 36,323.

---

[1]Reported in 67 N. W. (2d) 669.

*J. A. A. Burnquist,* Attorney General, *Geo. B. Sjoselius,* Deputy Attorney General, for the State.

*Sanborn, Jackson & Biorn, James H. Mulally,* and *Nye, Montague, Sullivan, Atmore & McMillan,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal by the state of Minnesota as plaintiff from a judgment entered in the district court in favor of defendant.

This is an action for a declaratory judgment determining the rights of the parties under a lease and contract in regard to the payment of royalties in the amount of $127,500 on iron ore owned by plaintiff and mined, removed, and shipped by defendant. The controversy between the parties revolves about the construction of the paragraphs of the lease relating to the payments to be made to plaintiff.

The trial court found that on July 1, 1918, plaintiff and one John R. Van Derlip entered into a lease pursuant to L. 1917, c. 110; that the premises were leased to Van Derlip for the purpose of exploring for, mining, and removing iron ore owned by plaintiff which was or may be in or under the land and beneath the bed of Syracuse Lake; that thereafter, by various assignments, defendant, on August 31, 1943, became the owner of the lease and the lessee thereunder and succeeded to all the rights and assumed all the obligations of the lease inuring to or incurred by the lessee thereunder. The court further found that the lease contained, among other things, the following provisions:

"The party of the second part, in consideration of the premises, hereby covenants and agrees to and with the parties of the first part, that the party of the second part will, on or before the Twentieth (20) day of April, July, October and January, in each year, during the period this contract continues in force, pay to the treasurer of the State of Minnesota, for all the iron ore belonging to said State and mined, removed and shipped from said land during the three (3)

months preceding the first day of the month in which payment is to be made, as aforesaid, at the rate of fifty (50¢) cents per ton, for all iron ore so taken out, mined, removed and shipped, each ton to be reckoned at twenty-two hundred and forty (2240) pounds.

\* \* \* \* \*

"The party of the second part further covenants that there shall be mined, removed and shipped from said land of the iron ore therein owned by the State of Minnesota at least ten thousand (10,000) tons annually; and in case the said party of the second part shall not annually ship from said land ten thousand (10,000) tons of such ore, as above stipulated, the party of the second part shall annually pay into the treasury of the State of Minnesota, a royalty of $5,000.00, which payment shall be made quarterly as above specified. The obligation of the party of the second part to make such payment shall continue in force as long as this lease remains in force whether there actually be any ore in said premises or not. Minimum payments shall be deemed to be rent for said premises; but the party of the second part shall be entitled to take credit for all minimum payments made by him on royalties thereafter accruing for ore owned by the State of Minnesota mined, removed and shipped from said premises in any year in excess of the amount of ore required to be mined and shipped annually by the terms of the lease."

The court next found that, from the date of the execution of the lease through the year 1943, no iron ore was removed from the property by the lessee and his assignors; that during all of said period the lessee and his assignors paid to the state as the annual minimum payments in accordance with the terms of the lease the sum of $5,000 per year; that the last of such payments was made January 1, 1944, and covered the minimum payment for the last quarter of 1943; and that the total amount of such payments from the date of the execution of the lease to and including the payment made January 1, 1944, was $127,500. The court further found that no iron ore was removed from the leased premises during the first quarter of 1944 and that defendant duly paid to plaintiff the minimum quarterly payment provided by the lease in the sum of $1,250; that during the

second quarter of 1944 defendant commenced removing ore from the premises and during the remainder of 1944 and in subsequent years has continued to mine and ship ore from the premises; and that the royalties upon ore removed during 1944 and subsequent years, as provided in the lease, amounted to a sum far in excess of $127,500.

The court then found that defendant paid to plaintiff royalties on account of the removal of ore during 1944 and upon ore mined during subsequent years but has deducted from the amount so paid the sum of $127,500 and has refused to pay that amount for the reason that defendant claimed and still claims that it was entitled to deduct from the royalties payable upon ore removed and shipped in 1944 and subsequent years the full amount of the minimum payments under the lease to and including the entire year of 1943.

The court concluded that defendant was entitled to a judgment and decree determining that under the terms of the lease dated July 1, 1918, defendant was and is entitled to apply the full amount of the minimum payments made by defendant and its predecessors in interest under the lease during the years from the execution of the lease to and including the payment made January 1, 1944, covering the fourth quarter of 1943. It also concluded that such payments could be applied against the royalties becoming due in 1944 and subsequent years for iron ore mined, shipped, and removed from the premises in excess of the amount of ore required to be mined, shipped, and removed in 1944 and subsequent years.

In its memorandum the trial court said:

"* * * After careful consideration I have arrived at the conclusion that the defendant is entitled to credit the entire amount of the minimum payments upon the amount due as royalties in the year 1944 and subsequent years. It seems to me that the lease is plain and unambiguous on its face, and that it is not subject to any other construction."

The trial court's findings are not objected to by plaintiff. It does, however, assign as error the court's denial of its motion to strike the conclusions of law above referred to and to insert in lieu thereof plaintiff's proposed conclusion of law, as follows:

"That under the terms of the lease dated July 1, 1918, the defendant was and is entitled to apply the full amount of the minimum quarterly rental payments made by the defendant and its predecessors in interest under said lease for each year from the execution thereof to and including the payment made January 1, 1944, for the fourth quarter of the year 1943, against royalties becoming due for ores mined, shipped and removed from the premises in the year for which such rental payments became due and were paid. That the defendant is not entitled to credit for the amount paid as minimum rentals for any year upon royalties becoming due for ore mined, shipped and removed from the premises in any year subsequent to the year for which such minimum rentals became due and were paid."

The only issue involved, therefore, is whether under the terms of the lease defendant may take credit on royalties for iron ore mined and removed in subsequent years for royalties paid as rent in prior years during which no iron ore was mined and removed by the lessee from the leased premises.

Plaintiff quotes the following rules in support of its position:

"(f) Where a public interest is affected an interpretation is preferred which favors the public." Restatement, Contracts, § 236.

"Grants of franchises and contracts or agreements affecting the public interest are to be construed liberally in favor of the public." 3 Williston, Contracts (Rev. ed.) § 626.

In both instances we find the above rules listed as rules to be applied only after other rules have been exhausted. For example, the rule from Restatement is paragraph (f) under the following heading:

"Where the meaning to be given to an agreement or to acts relating to the formation of an agreement remains uncertain after the application of the standards of interpretation stated in §§ 230, 233, with the aid of the rules stated in § 235, the following rules are applicable:"

Again, in 3 Williston, Contracts (Rev. ed.) § 617, the following statement appears:

"* * * The primary rules are those which are always applicable, whether the writing seems clear or ambiguous. The secondary rules are those which are applicable only where after the primary rules or principles have been applied, the local meaning of the writing is still uncertain or ambiguous."

And the rule stated by plaintiff is given as a secondary rule.

The primary rules to be applied before applying the rules quoted by plaintiff are as follows:

"(a) The ordinary meaning of language throughout the country is given to words unless circumstances show that a different meaning is applicable.

"(b) Technical terms and words of art are given their technical meaning unless the context or a usage which is applicable indicates a different meaning.

"(c) A writing is interpreted as a whole and all writings forming part of the same transaction are interpreted together.

"(d) All circumstances accompanying the transaction may be taken into consideration, * * *." Restatement, Contracts, § 235; 3 Williston, Contracts (Rev. ed.) § 618.

We have examined the lease thoroughly in the light of the above rules and agree with the trial court that the lease is plain and unambiguous. It clearly states: ·

"* * * the party of the second part [defendant] shall be entitled to take credit for all minimum payments made by him on royalties thereafter accruing * * *."

We are unable to find any words qualifying this privilege; on the contrary, the lease goes on to state "in any year." These words are absolutely unqualified as to time. Plaintiff argues, however, that these latter words should be construed to mean *in any given year* or *any current year* and that, if defendant's contention is to be upheld, the word "subsequent" should have been inserted so as to read "in any subsequent year." In other words, plaintiff argues in effect

that we should construe "in any year" to mean *in any current year* or *any given year*, but that we cannot construe it to mean *in any subsequent year*. In our opinion, it is not necessary for us to attempt to insert any language in connection with the words "in any year." They are plain and unambiguous and are not subject to any other construction.

We have held that, when the language used by the parties is plain and unambiguous, there is no room for construction, nor is the court permitted to take liberties with unambiguous contractual language to reduce liabilities clearly assumed. 4 Dunnell, Dig. (3 ed.) § 1817, and cases cited under notes 83 and 84.

In order to adopt plaintiff's interpretation of the provision we would have to add words to the lease which qualify and entirely change the meaning of the provision as it was written by the parties. This we cannot do. It is therefore our opinion that the trial court did not err in refusing to strike its conclusions and adopt those contended for by plaintiff.

Plaintiff cites Nelson v. Republic Iron & Steel Co. (8 Cir.) 240 F. 285; State v. Cavour Min. Co. 143 Minn. 271, 173 N. W. 415, and other cases. These cases stand for the proposition that the right to future credits may not be read into a lease by implication. This, of course, is the law. However, in view of the provision which is in this lease and what we have stated above, we do not feel that these cases have any application to the case at bar.

Affirmed.